Bill STAIR *v.* Freda Cruise PHILLIPS

93-289                                                867 S.W.2d 453

Supreme Court of Arkansas
Opinion delivered December 20, 1993

*A. Wayne Davis* and *Jeff Dobbins*, for appellant.

*Carla Crouch*, for appellee.

ROBERT L. BROWN, Justice. The appellant, Bill Stair, appeals from a denial of his motion to intervene in certain proceedings concerning the two natural children of his former wife, Noemi Stair, and the denial of his petition to review. Stair was not the natural father of the children; nor had he adopted them. He raises three points on appeal, but they really boil down to one point — whether the juvenile judge correctly denied his participation in the proceedings dealing with Noemi Stair's children in which he claimed an interest. We believe that the judge was right in find-

ing that Bill and Noemi Stair were divorced and that this rendered moot any interest that Bill Stair asserted in the matter affecting her children.

Bill and Noemi Stair were married in June of 1988 and began living in a house owned by Bill Stair in Mountain View. Noemi Stair had two children from a previous marriage when she married Bill Stair — Jason Sandefer, who at this writing is age 15, and Steven Sandefer, who is age 12. Steven is mentally retarded to some degree, although the extent of the retardation is not known to this court. Early in 1990, Noemi Stair came to the State Department of Human Services with photographs and other documentation evidencing physical abuse which she claimed Bill Stair had inflicted upon her. A restraining order was issued against Bill Stair, but he subsequently returned home.

On February 5, 1990, Noemi Stair reported that Bill Stair had physically abused her children. Bill Stair agreed to leave the home, but shortly thereafter he apparently returned. Another complaint was filed with DHS on March 23, 1990. This time, Bill Stair admitted that he may have been the reason for the bruising found on Steven. On April 23, 1990, a complaint was filed by DHS reporting that Noemi Stair had left the children unsupervised. Two additional complaints were filed by DHS, alleging that she had also left the children alone on April 30, 1990, and May 4, 1990.

In May of 1990, Steven was sent to The Bridgeway Psychiatric Hospital in North Little Rock where he was diagnosed as having epilepsy. While he was being treated at The Bridgeway, Steven told hospital personnel that his stepfather had sexually molested him. Steven was examined, but there was no physical evidence to substantiate the allegations. Bill Stair denied the allegations, and no criminal charges have been filed.

In July of 1990, Noemi Stair filed for divorce and moved from Bill Stair's home to Dove House in Clinton, a shelter for homeless and battered women and children. She had apparently moved back in with Bill Stair by January of 1991. Shortly after she returned, appellee Freda Phillips, a social worker with DHS visited the house several times.

On April 12, 1991, DHS filed a petition for court-ordered protective services for the two children and an alternative peti-

tion for custody. Noemi Stair filed a response to the petition for custody, admitting that there had been problems in the past but contending that since she had returned to Bill Stair's home in January of 1991, there had been no evidence of further abuse by him.

A hearing on the DHS petitions for protective services and custody was held on June 21 and 22, 1991. By that time, Bill and Noemi Stair were no longer living together. On the first day of the hearing, prior to the judge's receiving testimony, Bill Stair made an oral motion to intervene and contended that he had been accused of things that could subject him to criminal prosecution, and as a result he needed to protect his rights. Noemi Stair objected to this intervention. The juvenile judge ruled that the proceedings would not affect the appellant, and he denied the motion. At the conclusion of the hearing, the judge determined that the family was in need of DHS protective services and ordered that the children could not be in the same household as Bill Stair.

A review hearing was conducted on December 2, 1991, but neither Bill nor Noemi Stair was present. The DHS caseworker at the hearing advised the court that Bill Stair was pursuing a claim against DHS on the basis that it had broken up his family. The caseworker added that he had been communicating with Noemi Stair. The judge approved continued protective services for the family.

On February 13, 1992, Bill Stair filed a formal motion to intervene. That same date, he also filed a petition for review in which he contended that prior hearings had been conducted without his presence and that as the stepfather of Noemi Stair's children, he had a right to notice of these hearings. DHS responded that as an estranged stepparent, Bill Stair had no standing in this matter.

On April 23, 1992, the juvenile judge heard Bill Stair's motion for intervention. By this time, Noemi Stair had filed for divorce which Bill Stair was contesting. At the conclusion of the hearing, the judge did not rule but stated that he wanted written briefs on the issues raised. Bill Stair later filed an amended motion for intervention contending that he was a necessary party under Ark. R. Civ. P. 19.

On October 26, 1992, the judge wrote a letter opinion to the parties stating that Bill and Noemi Stair were now divorced and that he was denying Bill Stair's petition for review and his motion to intervene. He concluded that Bill Stair had no standing in this matter because he was not a parent to these children and was now divorced from their natural mother, and that in light of these circumstances the case was moot.

Stair's appeal emanates from the judge's order which was subsequently entered. He first asserts that the juvenile judge erred in denying his motion to intervene because he had a liberty interest in his marriage and family which is protected by the Due Process Clauses of both the state and federal constitutions. He argues that he and Noemi were living together when DHS first filed its petitions in 1991 and that the actions of DHS and the resulting court ruling preventing his association with her children caused his marriage to dissolve. In short, he maintains that he was entitled to intervene in the DHS proceedings under Ark. R. Civ. P. 24. Though his written motion to intervene was filed on February 3, 1992 — approximately eight months after the June 21, 1991 hearing — he claims that it was nevertheless timely because it related back to the oral motion made at the earlier hearing.

Finally, he urges that though he and Noemi are divorced, the matter is not moot because they could reconcile at any time which would put this matter before the court again. Alternatively, he contends that even if the matter is moot, this court should address the public policy aspects because procedural due process rights are involved.

Stair's arguments are not persuasive. We first note that the original theory he advanced for intervention at the June 21, 1991 hearing was that he was being accused of criminal conduct and should have the right to defend himself. Eight months later when he filed his formal motion to intervene and his brief, he did not appreciably change his grounds for intervention. At that time, he also asserted in his brief supporting the motion that numerous allegations of physical abuse and sexual abuse had been made against him and that he had been denied notice and the right to be heard and the right to present evidence. There was no assertion that his liberty rights in his marriage had been adversely affected.

. It was not until the hearing on his motion to intervene held on April 23, 1992, that he broached the argument that his liberty interest in his marriage had been jeopardized. At that time, the judge was advised that the Stairs were estranged and that a divorce action had been filed by Noemi Stair. The judge then observed that he had not ordered the Stairs to separate but only that the children live apart from their stepfather.

Lateness in raising the argument of marital impingement does not decide this matter, however. We agree with the juvenile judge that following the divorce which occurred before the judge's letter opinion of October 26, 1992, the matter was moot. In that opinion, the judge wrote:

> Bill Stair was not a parent and at the time of the hearing the couple was separated. That separation continued until the parties were divorced so I do not find merit in the argument that the Department of Human Services forced this couple to separate. Therefore, Mr. Stair was not, and should not be, a party to this suit. Had the parties reconciled and this Court been placed in the position of entering orders that would have forced Mr. Stair to comply with some Court ordered requirement then he most likely should have been made a party. But, under the circumstances presented, Mr. Stair was not a necessary party nor do I feel he had a constitutional right to be a party.

> Mr. Stair was under no obligation from this Court to abandon his home. That was an action he took of his own free will and it would seem after consultation with his attorney his liberty and freedom were not affected by this Court's action.

> Lastly, since the parties are now divorced and their property issues adjudicated, this case, as it relates to Mr. Stair, is a moot issue and I see no compelling reason to hold lengthy hearings that will lead this Court to no new conclusions.

The juvenile judge was entirely correct.

This court has stated that a case becomes moot when any judgment rendered would have no practical legal effect upon

a then existing legal controversy. *Arkansas Intercollegiate Conference* v. *Parnham*, 309 Ark. 170, 828 S.W.2d 828 (1992). We may elect, however, to address a moot issue where it raises considerations of public interest or will prevent future litigation. *Duhon* v. *Gravett*, 302 Ark. 358, 790 S.W.2d 155 (1990). Such is not the case here. Bill Stair's attempt to intervene is not of public interest because as a former stepparent he has no legal rights in the children. Furthermore, his suggestion that addressing these issues may prevent future litigation because he and Noemi Stair may reconcile sometime in the future is speculative and simply not supported by any evidence of record. This court does not give advisory opinions, and we refrain from doing so in this case. *See Scott* v. *McCuen*, 289 Ark. 41, 709 S.W.2d 77 (1986).

We further note that even without the divorce Bill Stair's claim of having an interest in Noemi Stair's children by virtue of his stepfather status is questionable. When a stepfather seeks to adopt his stepchildren or to obtain legal custody of them, his rights have been acknowledged. *See Bevis* v. *Bevis*, 254 S.C. 345, 175 S.E.2d 398 (1970); *Root* v. *Allen*, 151 Colo. 311, 377 P.2d 117 (1962). Here, however, neither of those circumstances pertains. Stair was not an adoptive parent or a legal custodian of the children. Noemi Stair was the parent with legal custody. Moreover, Stair presents nothing to support a claim that he was standing *in loco parentis* to the children or acting as their custodian under Ark. Code Ann. § 9-27-303(9) (1987). We are aware of no authority where the mere status of stepfather entitles that person to notice and participation in the question of protective services or custody. Something more must be shown to qualify as standing *in loco parentis. Standridge* v. *Standridge*, 304 Ark. 364, 803 S.W.2d 496 (1991). In this case, just the opposite appears evident. There were multiple separations, and the record reflects that throughout these proceedings Stair has shown more interest in clearing his name than in the children.

Stair's additional argument that he claimed an interest as a necessary party to the DHS proceedings under Ark. R. Civ. P. 19(a) also fails for mootness. In addition, the juvenile judge was on sound footing in dismissing the petition for review of the physical and sexual abuse allegations made against him. The matter before the judge was whether the children needed

protective services because Noemi Stair was not caring for them, not whether Bill Stair had in fact abused Steven.

There was no error in the juvenile judge's decision.

Affirmed.