2012 Ark. 39

**Stephanie Spivey DANIEL, Appellant**

v.

**Darrell SPIVEY, Appellee.**

**No. 11–152.**

Supreme Court of Arkansas.

Feb. 2, 2012.

Rehearing Denied March 15, 2012.

Richard Ernest Worshman, Little Rock, for appellant.

Jesse Thurman Skinner Jr., Batesville, for appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellant Stephanie Spivey Daniel brings this appeal from the divorce decree entered by the Circuit Court of Woodruff County, wherein the court granted appellee Darrell Spivey visitation rights to appellant's daughter, who was born of a previous marriage. For reversal, appellant contends that the circuit court erred in ruling that appellee stood in loco parentis to the child. We agree and reverse.

The child at the heart of this appeal, S.B., was born on June 13, 2003, to appel-

lant and her former husband, Jeremy Bunch. When appellant and Bunch divorced in 2004, the decree placed custody of S.B. with appellant, while granting Bunch the right to reasonable visitation and ordering him to pay child support. Appellant began dating appellee in 2005. Initially, the two engaged in a long-distance relationship, as appellant lived in Monticello where she attended college, while appellee resided in Batesville. In 2006, appellant moved to the community of Peach Orchard, and in 2007, she purchased a home in McCrory. The parties |₂lived together in that home, although appellee continued to maintain his separate residence in Batesville.

On January 17, 2009, appellant and appellee married. However, twenty months later, appellant filed for divorce on August 17, 2010. In his answer and counterclaim for divorce, appellee requested visitation with S.B., alleging that he was entitled to this privilege because he had stood in loco parentis to the child for the past five years. The parties entered into a property-settlement agreement, leaving appellee's request for visitation as the only contested issue.

The record of the hearing established that appellee's job as a welder involved long hours and required travel that kept him away from home, sometimes for several weeks. However, there were also times that he remained off work for extended periods. In her testimony at the hearing, appellant acknowledged that appellee spent the majority of his time with her and S.B. when he was not working. Further, appellant admitted that S.B. loved appellee and that appellee also cared for S.B. She said that appellee accompanied her and the child on S.B.'s first days of kindergarten and first grade and that he attended a parent-teacher conference when S.B. was in the first grade. Appellant stated that

appellee helped S.B. with homework when he was available. She testified that she had left the child overnight with appellee a few times when she was out of town. She said that appellee did not pay any medical, dental, or daycare bills on behalf of S.B. and that he did not provide her with medical insurance. Appellant testified that appellee contributed $1,000 per month toward expenses but |₃that this sum also was used to pay his health insurance and bills associated with his home in Batesville. She said that Bunch exercised visitation at least once a month and that she objected to appellee's request for visitation because S.B. had a mother and a father and was already pulled between two households.

Bunch also testified in opposition to appellee's request for visitation. He said that S.B. called him "dad" or "daddy," and he felt that allowing appellee structured visitation would be confusing to S.B. Bunch also testified that he paid child support of $93 per week and that he exercised visitation with S.B. as often as he could.

During his testimony, appellee offered a number of photographs of him and S.B. hunting, fishing, frog gigging, and attending a fair. He testified that he contributed $1,000 per month toward expenses, sometimes bought groceries, and paid "some child care." He also testified that he once bought S.B. a pair of shoes at Walmart and that he had paid a doctor bill. Appellee also said that he picked up S.B. from daycare on occasion and that he had attended her pre-kindergarten graduation and an event called "dads for donuts." He testified that S.B. had called him "daddy" before, but he said that she used the nickname "nickel pickle" that came about because she could not pronounce his name. Appellee stated that, when he was at home, it was his evening job to give S.B. a bath and to brush her teeth. He said that he and S.B. have a "loving, strong, rela-

tionship like a father and a daughter have." He testified that he should have visitation with S.B. because "I've been the only father" and because S.B. trusts and depends on him.

Appellee also presented the testimony of witnesses who had observed the interaction between appellee and S.B. Each testified that appellee and the child shared an affectionate "father-daughter" type relationship. Joyce Powell, who operated the daycare center S.B. had attended, testified that appellee had picked up the child from daycare and that she was often paid from the parties' joint checking account.

The circuit court issued its decision granting appellee visitation rights in a letter opinion. After reciting the historical facts, the court ruled as follows:

> According to the testimony of the witnesses, excluding [Appellant], the relationship between [Appellee] and S.B. was that of father-child. Even though [Bunch] has exercised visitation with the child on weekends and for a short period in the summer, [Appellee] has lived, for the most part, with [Appellant] and S.B. since at least September 2006. According to the testimony of Dale Oldham, [Appellant's] supervisor from September 2006—April 2008, [Appellee] lived with [Appellant] and S.B. when he was off work. The testimony of the witnesses indicated [Appellee] and child hunted and fished together; [Appellee] disciplined S.B. when it was required and praised her when justified her [sic]. In dispute of this testimony, [Appellant] and her father testified, since the separation, the child has not indicated she has missed seeing [Appellee].
>
> Both parties agree that this court has the discretion to award visitation to a step-parent who has stood in loco parentis to a child. The testimony of all witnesses, excluding [Appellant], who testified on this point indicated S.B. and [Appellee] had a father-child relationship prior to the separation of these parties.
>
> In this instance, S.B. has a father who is involved in her life. Neither biological parent wants the relationship to continue. The court however must take into account the fact that the relationship is one that, at one point in time, was in fact fostered by [Appellant] and tolerated by Mr. Bunch. It is a relationship that has existed for five (5) of the seven (7) years of this child's existence. Taking that into consideration, the question then becomes whether it is in the best interest of the child for this relationship to continue.
>
> The court finds that the [Appellee] did stand in loco parentis to the child S.B. and that it is in the best interest of the child to continue to have a relationship with each other. [Appellee] will be allowed to visit one weekend per month; one week in the summer; and one overnight visit during each of the following breaks: Spring and Christmas. [Appellee] may also have telephone communication with the child each Tuesday at 6:00 p.m. [Appellant] shall make the child available for these conversations. The court's usual parenting language shall be applicable in this situation and shall be included in the order to be prepared by Mr. Skinner. The order shall be forwarded to Mr. Myers for approval as to form, and to this Court for execution.

The decree of divorce included the circuit court's ruling. This appeal followed.

 For reversal of the circuit court's decision, appellant contends that the court erred in ruling that appellee stood in loco parentis to the child.[1] This court has tra-

---

1. The heading of appellant's argument on appeal includes the statement that the circuit

ditionally reviewed matters that sound in equity de novo on the record with respect to fact questions and legal questions. *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). We will not reverse a finding made by the circuit court unless it is clearly erroneous. *Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823. We have further stated that a circuit court's finding is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731. We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Hunt v. Perry*, 357 Ark. 224, 162 S.W.3d 891 (2004). This deference to the circuit court is even greater in cases involving child custody or visitation, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005).

The Latin phrase, "in loco parentis," literally translated, means "in the place of a parent." *Simms v. United States*, 867 A.2d 200 (D.C.2005). This court has defined in loco parentis as "in place of a parent; instead of a parent; charged factitiously with a parent's rights, duties, and responsibilities." *Standridge v. Standridge*, 304 Ark. 364, 372, 803 S.W.2d 496, 500 (1991). A person who stands in loco parentis to a child puts himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to a legal adoption. *Babb v. Matlock*, 340 Ark. 263, 9 S.W.3d 508 (2000). This relationship involves more than a duty to aid and assist, and more than a feeling of kindness, affection, or generosity. *Simms*, *supra*.

One's mere status as a stepparent does not support a finding of in loco parentis. *Stair v. Phillips*, 315 Ark. 429, 867 S.W.2d 453 (1993). "Something more must be shown to qualify as standing in loco parentis." *Id.* at 535, 867 S.W.2d at 456. In loco parentis refers to a person who has fully put himself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship and who actually discharges those obligations. *Rutkowski v. Wasko*, 286 A.D. 327, 143 N.Y.S.2d 1 (N.Y.App.Div. 1955). A stepparent who furnishes necessities for a minor child of his or her spouse and who exercises some control over the child does not, by those acts alone, establish a parental relationship. *Id.* In making a determination as to whether a nonparent stands in loco parentis, courts consider the totality of the circumstances and do not lightly infer the intent of the person seeking to be considered as standing in loco parentis. *Smith v. Smith*, 922 So.2d 94 (Ala.2005). While the length of time a person spends with a child is not determinative, it is a significant factor in considering whether that person intended to assume parental obligations or has performed parental duties. *Id.*

court's decision is contrary to the child's best interest. However, the body of her brief contains no argument regarding best interest. In the absence of any argument, we consider the point waived. *See Brockwell v. State*, 260 Ark. 807, 545 S.W.2d 60 (1976) (mere statement of point for appeal is insufficient argument for reversal; point waived if not argued); *see also Dougan v. State*, 330 Ark. 827, 957 S.W.2d 182 (1997) (mere mention of an alleged error in a subheading of one's brief, without any argument or citation to authority, will not be addressed).

This court has held that a circuit court may award visitation to a stepparent who stands in loco parentis to a minor child of a natural parent when it determines that preservation of the relationship is in the best interest of the child. *Robinson v. Ford–Robinson*, 362 Ark. 232, 208 S.W.3d 140 (2005). In *Robinson*, this court affirmed a grant of visitation to a stepmother who had raised a child as her own for seven years, beginning when the child was eighteen months old. The stepmother was the only mother the child had ever known; the child referred to her as "Mommy"; and the child did not learn until he entered the first grade that the stepmother was not his natural mother. Similarly, in *Bethany, supra*, we upheld an award of visitation with a three-year-old child to the same-sex partner of the natural mother. From the outset, the natural mother and the partner had agreed to co-parent the child; the child referred to the partner as a mother; the partner had served as the stay-at-home parent for the child; and the partner's family was heavily involved in the child's life. On these facts, we affirmed the circuit court's decision that the partner stood in loco parentis to the child. In both *Robinson* and *Bethany*, the evidence demonstrated that the stepmother and partner had assumed all of the rights, duties, and responsibilities of a parent.

By contrast, in *Standridge, supra*, we overturned a circuit court's decision that a stepfather stood in loco parentis to his wife's child. In that case, the stepfather had been married to the child's mother for fifteen months. The evidence showed that the stepfather provided monetary support for the child; that he took the child hunting, fishing, and swimming; and that the child accompanied the stepfather to work most every day. In reversing, we accepted that these facts were established in the record but said that "our holding is that the court erred not in finding facts but in characterizing the relationship as one in loco parentis." *Standridge*, 304 Ark. at 370, 803 S.W.2d at 499. This holding foreshadowed our subsequent pronouncement in *Stair, supra*, that something more than being a stepparent must be shown to establish an in loco parentis relationship.

As discussed, our case law reflects that the hallmark of the in loco parentis relationship is the assumption of the rights, duties, and responsibilities associated with being a parent. Thus, one's mere status as a stepparent does not suffice. In ruling that appellee stood in loco parentis to the child, the circuit court considered the length of time appellee had been in the child's life and the testimony describing the closeness of the relationship as being like that of a parent and child. The circuit court noted that appellee and the child participated in recreational activities, and the court also found that appellee disciplined the child when necessary and praised her when justified. Upon our de novo review, we also take into account appellee's testimony that he occasionally tended to her needs, provided necessities, babysat, and attended school programs. While we will not overturn a circuit court's factual determinations unless they are clearly erroneous, we are free in a de novo review to reach a different result required by the law. *Hetman v. Schwade*, 2009 Ark. 302, 317 S.W.3d 559; *Standridge, supra; Winn v. Chateau Cantrell Apartment Co.*, 304 Ark. 146, 801 S.W.2d 261 (1990). All things considered, we are convinced that these facts do not rise to the level that is necessary to establish an in loco parentis relationship. In our view, the sum of these facts demonstrates that appellee assumed the role of a caring stepparent, but they fall well short of establishing that appellee embraced the rights, duties, and responsibilities of a parent. Thus, we hold that the circuit court erred by characteriz-

ing the relationship as one of in loco parentis, and we reverse the award of visitation.[2] *Standridge, supra.*

Reversed.

CORBIN, BROWN, and DANIELSON, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting.

The majority's refusal to acknowledge the full import of its decision greatly disturbs me. In my thirty-one years on the appellate bench, I have never witnessed a case where the well-established principle of stare decisis is so carelessly ignored. The majority is purposefully vague with regard to the appropriate standard of review to be utilized in this case, but it is clear from the end result that the majority is reviewing the circuit court's finding of in loco parentis as a conclusion of law, which is completely contrary to this court's holding in *Bethany v. Jones,* 2011 Ark. 67, 378 S.W.3d 731, a decision authored by me, and *Robinson v. Ford–Robinson,* 362 Ark. 232, 208 S.W.3d 140 (2005), a decision authored by another member of this court, who inexplicably has now abandoned his previous position.

In both of those cases, this court reviewed the findings of in loco parentis under the clearly erroneous standard of review, giving due regard to the circuit court's findings. The majority supports its conclusion to give no deference to the circuit court's finding of in loco parentis by referencing a line of cases wherein this court held that "we are free in a de novo review to reach a different result required by the law." *See Hetman v. Schwade,* 2009 Ark. 302, at 5, 317 S.W.3d 559, 562; *Standridge v. Standridge,* 304 Ark. 364, 370, 803 S.W.2d 496, 499 (1991); *see also Winn v. Chateau Cantrell Apartment Co.,* 304 Ark. 146, 801 S.W.2d 261 (1990). In each of those cases, we reversed on the basis that the lower court erred in its legal conclusion. Now, the majority uses those cases, none of which involves an issue of child custody or visitation, to support its decision reversing the circuit court's factual finding that Darrell Spivey stood in loco parentis to S.B.

Although the majority refuses to acknowledge it, the fact is that its decision overrules the standard of review employed in *Bethany* and *Robinson,* two cases directly on point. One of the duties of this court, as the highest court in this state, is to provide guidance for the bench and the bar. We cannot satisfy this duty if we fail to acknowledge that we are departing from precedent.

I respectfully dissent.

BROWN and DANIELSON, JJ., join in this dissent.

2. Appellant also argues on appeal that the circuit court's decision denies her right to due process and infringes on her fundamental right to raise her child without state interference. However, appellant acknowledges that at trial she did not challenge the authority of the circuit court to award stepparent visitation on constitutional grounds. It is well settled that this court will not address an issue raised for the first time on appeal, even a constitutional argument. *Bayer CropScience LP v. Schafer,* 2011 Ark. 518, 385 S.W.3d 822. Moreover, even if these issues were preserved for appeal, we would decline to address them because it is our duty to refrain from addressing constitutional issues where, as here, the case can be disposed of without determining constitutional questions. *See Herman Wilson Lumber Co. v. Hughes,* 245 Ark. 168, 431 S.W.2d 487 (1968); *see also Solis v. State,* 371 Ark. 590, 269 S.W.3d 352 (2007) (holding that, if the case can be resolved without reaching constitutional arguments, it is our duty to do so); *Haase v. Starnes,* 323 Ark. 263, 915 S.W.2d 675 (1996) (holding that constitutional issues are not decided unless it is necessary to the decision).

PAUL E. DANIELSON, Justice, dissenting.

The majority's decision in the instant case clearly leaves the circuit courts of this state in the proverbial position of being up a creek without a paddle when rendering future decisions in visitation matters involving a stepparent. While acknowledging our "even greater" deference to the circuit courts in cases involving child custody or visitation, the majority completely ignores and disregards the circuit court's findings of credibility made after examining and hearing from the witnesses in the instant case. Instead, the majority substitutes its own opinion in holding that Spivey did not stand in loco parentis to S.B., a decision with which I strongly disagree, and their decision fundamentally alters the state of our law in this area. Accordingly, I dissent.

As an initial matter, I note the majority's blatant disregard for our standard of review in cases such as this. It is well settled that a circuit court's finding of in loco parentis, in the context of visitation matters, is to be reviewed under a clearly erroneous standard. *See Bethany* |₁₂*v. Jones,* 2011 Ark. 67, at 11, 378 S.W.3d 731, 737 ("Thus, we must now determine whether the circuit court's finding that Jones stood in loco parentis was clearly erroneous, as we review domestic-relations cases de novo on the record."); *Robinson v. Ford–Robinson,* 362 Ark. 232, 240, 208 S.W.3d 140, 144 (2005) ("[W]e hold that the circuit court's finding that Karen stood in loco parentis to Austin was not clearly erroneous."). In both *Bethany* and *Robinson,* we decided the precise issue presented in the instant case; the majority's refusal to acknowledge and follow our controlling precedent demonstrates the majority's misunderstanding of, and fundamental disregard for, the applicable standard of review.

Turning to the merits, I find interesting the majority's conclusion that the facts in the instant case "fall well short of establishing that [Spivey] embraced the rights, duties, and responsibilities of a parent," simply because the facts of this case could well describe the relationship between any natural parent and child. It thus begs the question: what more could Spivey have done to so establish? More precisely, what would the majority require of a stepparent trying to establish an in loco parentis relationship?

The assumption of the parental relationship of in loco parentis is largely a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relation. *See* 59 Am.Jur.2d *Parent & Child* § 9 (2011). In loco parentis, as we have defined the term, means "in place of a parent; instead of a parent; charged factitiously with a parent's rights, duties, and responsibilities." *Robinson,* 362 Ark. at 239, 208 S.W.3d at 144 (quoting *Standridge v. Standridge,* 304 Ark. 364, 372, 803 S.W.2d 496, 500 (1991) (citing |₁₃*Black's Law Dictionary* (5th ed. 1979))). The performance of parental duties, as determined by one court in relation to the doctrine of in loco parentis, generally includes consideration of the following factors: (1) providing support and maintenance for the child; (2) providing day-to-day care for the child; (3) displaying a true interest in the well-being and general welfare of the child; and (4) educating, instructing, and caring for the child. *See Smith v. Smith,* 922 So.2d 94 (Ala.2005). Certainly, these factors are not exhaustive; however, the record in the instant case clearly demonstrates that Spivey's relationship with S.B. fulfilled each and every factor.

Here, the overwhelming testimony before the circuit court made more than clear that Spivey and S.B. enjoyed a parent-

child relationship that went well beyond a typical stepfather-stepchild relationship. Indeed, Spivey was much more to S.B. than a mere stepparent, and he demonstrated such through the evidence he presented to the circuit court. Simply because the majority does not like the end result in this case in no way warrants a reversal of the circuit court's decision that was made after thorough and careful consideration.

A review of the record in this case using the requisite standard of review makes plain that the circuit court did not clearly err in finding that Spivey stood in loco parentis to S.B., and therefore I would affirm the circuit court's order.

CORBIN and BROWN, JJ., join.