
# ARKANSAS COURT OF APPEALS

DIVISIONS II, III & IV

**No.** CV–15–918

| | | |
|---|---|---|
| CHELSEA S. HARLEY | APPELLANT | **Opinion Delivered:** March 8, 2017 |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. 60DR-07-5833] |
| WYNDHAM S. DEMPSTER, SR. | APPELLEE | HONORABLE VANN SMITH, JUDGE |
| | | SUBSTITUTED OPINION ON THE GRANT OF REHEARING; REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

This child-support case comes before us again as a result of our having granted a petition for rehearing. The case began with a complaint for support filed on December 13, 2007, against appellee Wyndham Dempster as to his two minor children with appellant Chelsea Harley. The plaintiff in the action was listed as the Office of Child Support Enforcement (OCSE), and Harley was listed on the pleadings as the assignor. Although Dempster was served with the petition to establish support, he did not answer or appear at the hearing. The circuit court issued an order on January 31, 2008, which stated that "[t]he OCSE is involved in establishment of a support order herein pursuant to its responsibilities under Ark. Code Ann. § 9-14-210(d) and § 9-10-104 under which the Assignor is the recipient of services under Title IV-D of the Social Security Act."

The order found that Dempster owed a continuing duty to support his children and ordered him to pay child support. Support payments were to be paid through the Child Support Clearinghouse. Harley was listed in the order as a lienholder.

Dempster did not pay his child support as ordered, and in March 2015, the OCSE filed a petition to modify the amount due and sought a judgment for the arrears, which were over $26,000. Dempster was served with the petition, but again, he failed to file an answer. He did, however, appear at the hearing on the matter in the Pulaski County Circuit Court on July 8, 2015. After a hearing, the circuit court issued an order of modification on July 16, 2015, which will be discussed below in greater detail. The point of contention before us is the circuit court's finding that Dempster would receive credit toward the arrears in the amount of $6,000—a portion of money paid by his parents for private-school tuition for the children. Harley filed an appeal from that order.

An opinion was issued by this court on December 7, 2016, by a nine-judge panel on a vote of 5-4 dismissing the appeal based on a finding that Harley did not have standing to appeal the lower court's decision to our court. Three dissents were issued along with the majority opinion. Upon petition for rehearing, that opinion is vacated, and this opinion is substituted as the majority opinion.

## I.  *Standard of Review*

Our review of the trial court's decision is de novo on the record, and we will not reverse findings of fact by the circuit court unless they are clearly erroneous. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005). We have further stated that a circuit court's finding is clearly erroneous when, despite supporting evidence in the record, the appellate court

viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Daniel v. Spivey*, 2012 Ark. 39, 386 S.W.3d 424. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Ward, supra.* A circuit court's conclusion of law, however, is given no deference on appeal. *Id.* As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id.* This court has traditionally reviewed matters that sound in equity de novo on the record with respect to factual questions and legal questions. *Daniel, supra.*

## II.  *Standing*

Neither Harley nor Dempster raised the issue of standing at the trial court level or in this appeal. It is the opinion of some members of the court that standing to bring the appeal is not jurisdictional; thus, it may be waived. In that event, we would proceed to address the merits of the appeal. The supreme court has held that to be the case. *See Pulaski Cty. v. Carriage Creek Prop. Owners Improvement Dist. No. 639*, 319 Ark. 12, 888 S.W.2d 652 (1994). The supreme court, however, has raised the issue of standing on its own. *See Swindle v. Benton Cty. Cir. Ct.*, 363 Ark. 118, 211 S.W.3d 522 (2005). The distinction may lie in the difference between standing at the trial court level and standing at the appellate court level. In either case, as a result of our previous decision and our grant of rehearing, it must be discussed.

Obviously, if Harley is considered a party, she has standing. This opinion addresses two aspects of the standing question: First, was Harley a party? Second, did she have a pecuniary interest in the litigation to give her standing to bring this appeal?

While Ark. Code Ann. § 9-14-109 (Repl. 2015) does grant party status to the OCSE in an enforcement case, and it is referred to as the "real party in interest," it does not follow that the custodial parent is not also a party to the litigation. In fact, there can be other issues in a domestic case, such as visitation, property, and custody. The OCSE makes it clear that it does not represent the custodial parent in these cases, so how would the dissent characterize the custodial parent? Harley is listed throughout the case as the "OSCE Assignor" in the case style, along with the OCSE as the plaintiff and Dempster as the defendant. Many cases have more "parties" than just one plaintiff and one defendant. There can be a claimant, counterclaimant, intervenor, garnishee, third-party defendant, etc. There is no argument that they are not parties. Why should it be so for an assignor with a direct interest in the outcome?

A review of the record shows that Harley's status as a party to the litigation is further supported by the following references:

- 2008 Default Judgment of Support refers to her and the OCSE as lienholders.

- 2015 Motion to Modify Support and for Judgment: In this motion, it was alleged in paragraph 2 "[t]hat since the entry of the last Order, a material change in the circumstances of the *parties* ha[d] occurred" (Emphasis added.) Paragraph 3 states "[t]hat WYNDHAM S. DEMSPTER SR has accrued a total past due child support in this matter in the amount of $26036.00 as of FEBRUARY 28, 2015 and that OCSE and/or its assignor is entitled to a judgment for said amount[.]" There was nothing that indicated a change in circumstances regarding the OCSE had occurred, leaving only the appellant and appellee to be "parties."

- Certainly, the OCSE considered Harley to be a party. The attorney for the OCSE sent a letter to the court along with a draft of the order for modification and referenced the case as: "Re: State of Arkansas, OCSE/Chelsea Harley vs. Wyndham Dempster, Sr."

- The Circuit Court also considered Harley to be a party. It was only after her consultation and consent that the arrears were reduced for the time period that "the parties" lived together.

If Harley had a pecuniary interest in the outcome, she also would have standing to bring this appeal. *See Swindle*, *supra*; *In re $3,166,199*, 337 Ark. 74, 987 S.W.2d 663 (1999).

Does the custodial parent of children owed child support have a pecuniary interest in the amount of the child support? At first blush, that might seem to be a simple question. While we believe the answer is yes, the path is not as short and direct as one might expect. The dissenting judges assert that because of Harley's assignment of her rights to pursue child-support arrears, she has no pecuniary interest, and hence no standing. As a recipient of Title IV-D benefits, she is required to assign those rights to the State of Arkansas. Taking that finding to its conclusion would mean that Harley would not receive any of the child-support payments or the arrears. That simply is not the case. Granted, there is nothing in the record specifically finding that she is entitled to the child support for her children, but there is no doubt that she is so entitled. It was never a question at the trial court level, and it should not be one here.

In *In re $3,166,199*, our supreme court applied the pecuniary-interest exception in a civil-forfeiture action in which both the Crittenden County Prosecuting Attorney and the Arkansas Highway Police each claimed ownership of money seized in a drug-related traffic stop. *Id*. The Arkansas Highway Police, though not a party below, appealed the circuit court's award of the funds to the prosecuting attorney. *Id*. The supreme court found that the Arkansas Highway Police had standing to bring the appeal due to its pecuniary interest in the funds.

Harley's pecuniary interest, as established by the record in the following instances, entitles her to standing: in the original default judgment, the circuit court listed both Harley and the OCSE as lienholders; in its motion to modify support and for judgment for past-due child support, the OCSE requested that Dempster be required to provide proof of previous years' income to Harley; at a hearing, Harley was consulted and agreed to give credit to Dempster for the period of twenty-one months that they had lived together; and in an affidavit dated January 29, 2008, OCSE Child Support Investigator Jonathan McFadden stated that, due to Dempster's failure to pay the $968 of support required, "[t]he State of Arkansas is entitled to $0.00 of said amount as reimbursement of AFDC or TEA benefits."

In addition to the real-world understanding that the custodial parent is the recipient of the child support, there is also law to support and even mandate such a conclusion. The circuit court found that Harley received services under Title IV-D of the Social Security Act or had signed a contract for services with the OCSE. In exchange for receiving certain federal money, Arkansas promises to provide particular services to people like Harley. 42 U.S.C. § 602 (2012). Under Title IV, the attorneys who enforce private child-support orders are employed by the State. The State, in turn, receives federal funding to pay for the enforcement. *See* 42 U.S.C. § 651; *see also* 42 U.S.C. § 652(a)(7)−(8); Ark. Code Ann. § 9-14-210. Any child-support arrearages that the OCSE collects must be paid to Harley directly within two business days under the federal-funding requirements. *See* 42 U.S.C. §§ 654, 657. Being a state governmental agency, the OCSE has enacted regulations that recognize



that "state and federal law requires OCSE to make payment directly to the custodial party." 006-25-1 Ark. Code R. 8.4.1 (Weil 2012); *see also* Ark. Code Ann. § 9-14-213.

### III. *Merits of the Case*

Having determined that Harley has standing to bring the appeal, we turn now to the merits of the case.

The trial court calculated a past-due amount of child support of $7,079: the $22,544 arrearage presented by the OCSE, less $9,465 for a credit agreed to by Harley for twenty-one months that the parties were living together, less a $6,000 credit recognized by the court for payments made by Dempster's parents for private-school tuition.

At issue in this appeal is the reduction of the arrears in the amount of $6,000 "for support paid by the Defendant's parents for Montessori school for the minor children." Harley alleges that the trial court erred in reducing the amount of the delinquent support by that amount. She puts forth three arguments in support of her position: (1) Dempster should have been precluded from arguing the affirmative defense of setoff because it was raised for the first time at trial, (2) the trial court abused its discretion by allowing a setoff because it did not conform to Ark. Code Ann. § 9-14-236, and (3) the trial court clearly erred in determining the private-school tuition payments were made in lieu of child support. The first two arguments might well be persuasive were we able to address them; unfortunately, we are not.

### A. The Issue of Setoff Is Not Preserved

It is true that setoff is an affirmative defense and must be raised in a responsive pleading or else it is waived. Ark. R. Civ. P. 8. Dempster did not file a responsive pleading

7

SLIP OPINION

at all; however, neither Harley nor the OSCE objected below on that ground. As such, that argument is not preserved for our review. *See Jackson v. Mundaca Fin. Servs.*, 349 Ark. 84, 76 S.W.3d 819 (2002) (holding that affirmative defenses may not be raised after the conclusion of the trial); *Sloop v. Kiker*, 2016 Ark. App. 125, 484 S.W.3d 696 (holding that an appellant must obtain a ruling on an issue in order to preserve the issue for appeal).

B.     The Impact of Ark. Code Ann. § 9-14-236 Is Not Preserved

Harley's second point must suffer a similar fate. Section 9–14–236 provides, "In any action involving the support of any minor child or children, the moving party shall be entitled to recover the full amount of accrued child support arrearages from the date of the initial support order until the filing of the action." We are unable to address the impact of Ark. Code Ann. § 9-14-236 because Harley did not raise the applicability of the statute below, nor did she obtain a ruling from the trial court on its application that would allow this court to review the decision. *See Sloop*, *supra*.

C.     The Trial Court's Decision Was Clearly Erroneous

The third point for reversal advanced by Harley is properly before this court, and we find that it is well taken. As stated previously, the tuition for private school was something that Dempster's parents wanted to provide for their grandchildren. Dempster did not pay his child support. He was taken to court on at least two occasions for failing to pay support, and he did not answer the summons on either occasion. Harley relied on some form of government assistance to care for her children—a reliance no doubt exacerbated by Dempster's refusal to pay his child support. Because the grandparents wanted the children to attend private school, they volunteered to pay the tuition. There was some evidence that

Dempster was not even aware of his parents' largesse. No one presented any evidence that the private-school tuition payments made by Dempster's parents were to be in lieu of child support. In fact, all of the testimony made it clear that they were not. Even the trial court stated that the school tuition was not child support. While the gesture of Dempster's parents was generous, it did not put food on the table or shoes on the feet of their grandchildren. To be fair, there was some evidence that they were unaware that their son was not supporting his children. These tuition payments were not made by Dempster and were not made to Harley or to the OCSE. It strains logic and flies in the face of the evidence presented to find that the tuition payments amounted to child support.

In the case before us, we are left with a definite and firm conviction that a mistake was made and that the circuit court abused its discretion as to the amount of child support Dempster owed. There was no supporting evidence to find that the private-school tuition payments made by Dempster's parents were child support. Further, there was no issue of credibility of witnesses; they all testified that the payments were not in lieu of child support.

Thus, we find that the trial court's arbitrary credit of $6,000 was clearly in error and an abuse of discretion. Accordingly, we reverse and remand the case to the trial court for entry of an order and judgment consistent with this opinion that complies with Ark. Code Ann. § 9-14-233, which governs arrearages.

Reversed and remanded.

HARRISON, VAUGHT, and HIXSON, JJ., agree.

GLADWIN and BROWN, JJ., dissent in part.

GRUBER, C.J., and GLOVER and WHITEAKER, JJ., dissent in part.

9

SLIP OPINION

**ROBERT J. GLADWIN, Judge, dissenting.** I dissent from the majority opinion. This court addresses two points. The first is whether appellant has standing to bring this appeal. The second is the merits of the case. We should not address standing because it was never raised or argued below, and I would affirm the trial court on the merits.

As stated in Judge Virden's opinion, neither party raised the issue of standing at the trial court level or to this court. Standing is not jurisdictional and may be waived. *See Pulaski Cty. v. Carriage Creek Imp. Dist. No. 639*, 319 Ark. 12, 888 S.W.2d 652 (1994). In *Swindle v. Benton County Circuit Court*, 363 Ark. 118, 211 S.W.3d 522 (2005), the supreme court raised the question of whether Swindle had standing to challenge the circuit court's order requiring him to pay for an interpreter in a criminal case. In that case, Swindle clearly had a pecuniary interest in the order entered by the circuit court. In its opinion, the supreme court did not discuss whether standing was jurisdictional and did not overrule the line of cases holding that standing can be waived. Here, standing was never argued and was therefore waived.

By raising the issue of standing, this court is making an argument for the appellee. We will not address arguments not made below, *see Seeco, Inc. v. Stewmon*, 2016 Ark. 453, 505 S.W.3d 230, nor fully developed on appeal. *See Block v. State*, 2010 Ark. App. 603, 377 S.W.3d 476.

I now turn to the merits of the case. Judge Virden's opinion adequately sets out the facts and the appropriate standard of review. Appellant raises three points on appeal.

> (1) The trial court erred by allowing the appellee to claim the affirmative defense of setoff for the first time at trial because appellee failed to plead the affirmative defense.

(2) The trial court abused its discretion by allowing an offset of the appellee's child-support arrears because its decision does not conform to the requirements set forth in Ark. Code Ann. § 9-14-236.

(3) The trial court's determination that appellee's parents' payments of private school tuition was child support is clearly erroneous because neither the grandparents nor the court believed the payments were in lieu of child support and there was a verbal contract setting forth the purpose of the tuition payments.

I agree with the majority opinion that the first two points were not preserved for appeal. The third issue is properly before our court. Simply stated, the issue is whether the trial court's finding that $6000 of the tuition payments may be offset against appellee's arrearage is clearly erroneous.

A child-support judgment is subject to the equitable defenses that apply to all other judgments. *Ramsey v. Ramsey*, 43 Ark. App. 41, 861 S.W.2d 311 (1993). In a proper case, an equitable defense may apply to prevent the collection of past-due child-support payments. *State Office of Child Support Enf't v. Mitchell*, 61 Ark. App. 54, 964 S.W.2d 218 (1998). Our case law provides that offset is an equitable defense. *Walker v. First Commercial Bank, N.A.*, 317 Ark. 617, 880 S.W.2d 316 (1994). In child-support determinations, the amount of child support lies within the sound discretion of the trial court, and the lower court's findings will not be reversed absent an abuse of discretion. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005).

The majority holds that the trial court erred by allowing an offset for the grandparents' tuition payment because it did not put food on the table or shoes on the feet of the grandchildren. It is undisputed that the children were benefiting from attending private school and that appellant wanted them in private school. In setting child support,

11

the trial court is not prohibited from considering other matters in addition to the child–support chart that have a strong bearing in determining the amount of support. *See Clark v. Tabor*, 38 Ark. App. 131, 830 S.W.2d 873 (1992). Further, the fact that the payments were not made by Dempster does not foreclose the trial court from allowing the offset. For at least seventy years, payments from Social Security and military allotments have been allowed to be credited for support payments. *See Cash v. Cash*, 234 Ark. 603, 353 S.W.2d 348 (1962); *Hinton v. Hinton*, 211 Ark. 159, 199 S.W.2d 591 (1947).

Adhering to our standard of review, I am not left with a definite and firm conviction that the trial court erred. The court heard all the evidence, considered all the equities, and made a decision that was consistent with the evidence. I would affirm the trial court. I am authorized to state that Judge Brown joins this opinion.

BROWN, J., joins.

**DAVID M. GLOVER, Judge, dissenting.** Respectfully, I dissent from the majority's opinion, which concludes Chelsea has standing to appeal 1) because she was a party below and 2) because she has suffered a pecuniary loss. My preference in resolving the standing issue has always been to remand the matter to the trial court to develop the record on the issue and for the parties to then address standing by rebriefing it on appeal; however, such a position did not prevail. Without further development of the record, the record before us fails to demonstrate Chelsea has standing to appeal.

The authors of Arkansas Civil Practice & Procedure explain in part:

> As a threshold matter, the appellant must have standing to appeal. This is not a problem in most cases. If the appellant was a party to the action in the trial court and aggrieved by the judgment, the standing requirement is satisfied.
> . . . .

A person who was not a party to the action below generally lacks standing to appeal. However, a person whose pecuniary interests are affected by the judgment has standing to seek appellate review even though he or she was never made a party.

David Newbern, John Watkins, & D.P. Marshall, Jr., *Arkansas Civil Practice and Procedure* § 40:1 (5th ed. 2010). In *Phillipy v. O'Reilly*, 95 Ark. App. 264, 266–67, 236 S.W.3d 548, 550–51 (2006), our court explained:

Guidance on standing is provided by three recent cases from our supreme court that cite *In re $3,166,199*, 337 Ark. 74, 987 S.W.2d 663 (1999). In that case, the supreme court reiterated the general rule regarding standing, "that an appellate court cannot act upon an appeal taken by one not a party to the action below." *Id.* at 79, 987 S.W.2d at 666. Under our rules of civil procedure, party status is generally obtained by initiating an action through filing a complaint or responding to a complaint by answer. *Id.*; *see also Cogburn v. Wolfenbarger*, 85 Ark. App. 206, 148 S.W.3d 787 (2004) (finding standing where an individual was served with notice of a hearing, filed an answer, and appeared at both the temporary and permanent hearings to contest the guardianship). It is also possible to become a party by intervention under Ark. R. Civ. P. 24 (2005), or by joinder under Ark. R. Civ. P. 19 (2005). *In re $3,166,199*, *supra*; *see also Beebe v. Fountain Lake School Dist.*, 365 Ark. 536, 231 S.W.3d 628 (2006) (finding standing based on collective basis related to prior party status, intervention, and constitutionality of a statute). In this case, none of these situations apply to appellant; therefore, he does not have standing as a party to the action to bring this appeal.

Arkansas appellate courts have recognized two other circumstances in which a nonparty may gain standing to pursue appellate review of a trial court's orders. The first occurs when a nonparty seeks relief under Ark. R. Civ. P. 60(k) (2005), which provides that an independent action may be filed to relieve a person from judgment who was not actually served with process. *In re $3,166,199*, *supra*. Appellant is not seeking this type of relief, as nothing was required of him pursuant to the trial court's order, so this exception is likewise inapplicable.

The final possible scenario would apply in the unique set of facts where any appellant, though not a party, has a pecuniary interest affected by the court's disposition of the matter below. In *Swindle v. Benton County Circuit Court*, 363 Ark. 118, 211 S.W.3d 522 (2005), our supreme court determined that an appellant had standing based upon this "pecuniary interest" exception where he was ordered by the circuit court to reimburse the public defender's office $150 for interpreting services that were provided to his Spanish-speaking client. The trial court had stated that the appellant was privately retained by his client and that it was his responsibility to make sure that the fee was paid. The supreme court addressed the standing issue,

although it was not raised by the appellee, and found that because the costs were assessed against the appellant personally, he had standing as a nonparty to request appellate review. Additionally, in *Springdale School Dist. No. 50 v. The Evans Law Firm, P.A.*, 360 Ark. 279, 200 S.W.3d 917 (2005), the supreme court determined that an attorney had standing to bring an appeal related to the circuit court's disposition of his attorney's fee in a case. The supreme court first pointed out that the attorney had specifically intervened with respect to the attorney's fee issues, and that would likely have been sufficient; however, the supreme court also addressed the fact that his direct pecuniary interest gave him standing to bring the appeal with respect to the attorney's fee issue.

In the context of this discussion, the term "party" has distinct and consequential meanings. Here, it is undisputed Chelsea, as "OCSE Assignor," assigned to OCSE her rights regarding the child-support arrearage. The July 16, 2015 order she is attempting to appeal provides:

> 2. The State of Arkansas, Office of Child Support Enforcement, is involved in the establishment and enforcement of a support obligation order herein pursuant to its rights and responsibilities under Ark. Code Ann. § 9-14-210(d) under which CHELSEA S. HARLEY is the recipient of services under Title IV-D of the Social Security Act or has signed a contract for services.

> . . . .

Arkansas Code Annotated section 9-14-210(d) (Repl. 2015), explains

> (d)  The State of Arkansas is the real party in interest for purposes of establishing paternity and securing repayment of benefits paid and assigned past-due support, future support, and costs in actions brought to establish, modify, or enforce an order of support in any of the following circumstances:
> (1)  Whenever public assistance under the transitional employment assistance program, i.e., Temporary Assistance for Needy Families Program, or § 20-77-109 or § 20-77-307 is provided to a dependent child or when child support services continue to be provided under 45 C.F.R. 302.33 as it existed on January 1, 2001;
> (2)  Whenever a contract and assignment for child support services have been entered into for the establishment or enforcement of a child support obligation for which an automatic assignment under § 9-14-109 is not in effect;
> (3)  Whenever duties are imposed on the state in Title IV-D cases pursuant to the Uniform Interstate Family Support Act, § 9-17-101 et seq.; or
> (4)  When a child is placed in the custody of the Department of Human Services and rights have been assigned under § 9-14-109.

Then, after subsection (d), the next two subsections offer clear instruction. Section 9-14-210(e) provides in part that in any action brought to enforce a child-support obligation, the Department of Human Services or the office, or both, or their contractors, may employ attorneys, and that an attorney so employed shall represent the interests of the Department of Human Services or the office and "does not represent the assignor of an interest set out in subsection (d) of this section." Moreover, "[r]epresentation by the employed attorney shall not be construed as creating an attorney-client relationship between the attorney and the assignor of an interest set forth in subsection (d) . . . ." Next, section 9-14-210(f)(2) provides that "for the benefit of the court clerk, in any action brought by the Department of Human Services or the office, or both, or their contractors, pursuant to subsection (d) of this section, the name of the physical custodian shall be set out in the body of any petition filed and order entered in the matter."

As the physical custodian for the children, Chelsea was clearly an interested person regarding this lawsuit, but she assigned to OCSE her rights to the child-support arrearage. The State of Arkansas, via OCSE, was the real party in interest pursuant to section 9-14-210(d) and initiated the lawsuit, as plaintiff, against Wyndham, as defendant. In the caption of every document filed in the trial court, the State (OCSE) is shown as the plaintiff, Wyndham Dempster is shown as the defendant, and Chelsea Harley is shown as "OCSE Assignor." The majority's references to instances in which Chelsea was informally identified as a party are not convincing to demonstrate her true status in the case. As this case was pled and tried, Chelsea was never a party. As the assignor, she was not automatically elevated to party status in order to bring an appeal.

15

The majority opinion sees it differently, explaining,

> Many cases have more "parties" than just one plaintiff and one defendant. There can be claimant, counterclaimant, intervenor, garnishee, third-party defendant, etc. There is no argument that they are not "parties." Why should it be so for an Assignor with direct interest in the outcome?

This argument is not convincing either, and the cited examples are distinguishable from the situation presented here. Claimants, counterclaimants, intervenors, garnishees, and third-party defendants have "entered" a case via procedural mechanisms that require the direct assertion or defense of claims. Chelsea, on the other hand, assigned to OCSE her right to pursue her claims. She never directly made the claims; they were made by OCSE on her behalf by assignment. She could have filed a motion to intervene in the proceedings or pursued some other course of action under our rules of procedure to be directly involved in the case when OCSE decided it was not going to pursue an appeal, but she did not.

The majority opinion expands its position, arguing that, in addition to Chelsea being a "party" below, her pecuniary interests were also injured, affording her another basis for standing to appeal. Repeating myself, a remand to allow the parties to further develop the record and make their arguments to us regarding Chelsea's standing to appeal is my preference. Because that position did not prevail, we are left with an underdeveloped record concerning this important preliminary issue.

The record before us does not reveal how Chelsea's pecuniary interests have been affected by the trial court's decision. The July 16, 2015 order does not grant her the child-support-arrearage judgment; it very specifically grants the judgment to OCSE:

> 5. . . . Therefore, *the OCSE is granted Judgment in the amount of $7,079.00 in past due child support as of June 26, 2015*. WYNDHAM S. DEMPSTER, SR. is

> ordered to pay the sum of $32.00 weekly in addition to current support previously ordered to be applied to said judgment.

(Emphasis added.)  The judgment was awarded to OCSE with no indication that any Title IV funds Chelsea might have received were affected by the trial court's decision or whether OCSE was to turn over to Chelsea the $32 Wyndham was ordered to pay OCSE (which understandably would have been a larger amount if the entire arrearage had been ordered). In other words, on this record, OCSE's pecuniary interests suffered, but we have no basis for concluding Chelsea's did. The majority judges may have personal knowledge and experiences leading them to the conclusion that Chelsea's pecuniary interests have suffered as a result of the trial court's decision, but this information is not apparent from the record before us.

Rule 17 of the Arkansas Rules of Civil Procedure is also not applicable to the situation presented by this appeal.  Rule 17(a) provides:

> (a) *Real Party in Interest*. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian (conservator), bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or the State or any officer thereof or any person authorized by statute to do so may sue in his own name without joining with him the party for whose benefit the action is being brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

D.

Here, the real parties in interest were represented at trial—OCSE as plaintiff and Wyndham as defendant—and Rule 17 was never brought into play.

SLIP OPINION

We are confronted with Chelsea's standing to appeal. I agree that standing is not a jurisdictional issue but that our court may raise it on its own motion. Her standing to appeal is presented in the context that she was not the plaintiff below, OCSE was; the child-support-arrearage judgment was not granted to her, it was granted to OCSE; and the record before us does not demonstrate whether Chelsea's pecuniary interests have suffered as a result of the trial court's decision. On this record, Chelsea does not have standing to bring this appeal, and I would dismiss the appeal. Consequently, I dissent.

GRUBER, C.J., and WHITEAKER, J., join.

*Ballard & Ballard, P.A.*, by: *Andrew D. Ballard*, for appellant.

*Hicks & Associates, P.A.*, by: *Carrol Ann Hicks*, for appellee.