SNEED v. REYNOLDS.

Opinion delivered December 15, 1924.

1. WILLS—NECESSITY OF DATE.—As the statutes require no date to a will, a date is not essential to a will, either one that is attested or one that is holographic in form.

2. WILLS—HOLOGRAPHIC WILL IN FORM OF LETTER.—That a holographic will was in the form of a letter to one of the beneficiaries did not render it void.

3. WILLS—ADMISSION OF TESTIMONY OF BENEFICIARY.—Admission of testimony of the beneficiary under a holographic will as to its execution was not error; Crawford & Moses' Dig., § 10529, applying only to beneficiaries who are also attesting witnesses.

4. WILLS—DECLARATIONS OF TESTATRIX.—On the issue as to the mental capacity of the testatrix, it was admissible to prove her declarations of knowledge as to the result under the law if she should die without a will.

5. APPEAL AND ERROR—OBJECTION NOT RAISED BELOW.—Objection to the competency of witnesses may not be raised for the first time on appeal.

6. WILLS—HANDWRITING OF TESTATRIX—COMPETENCY OF WITNESSES. —Witnesses who showed familiarity with the handwriting of testatrix *held* qualified to testify on the issue whether a holographic will was in the handwriting of the testatrix, as required by Crawford & Moses' Dig., § 10494, par. 5; the weight of their testimony being for the jury.

7. WILLS—UNDUE INFLUENCE—JURY QUESTION.—The fact that the chief beneficiary of a will was the husband of testatrix, and was present in a conference with her, was not sufficient to justify submission of the issue of undue influence springing from fear, coercion or any other cause which deprives the testatrix of her free agency in the disposition of her property.

8. TRIAL—INSTRUCTIONS—GENERAL OBJECTION.—A general objection was insufficient to raise the question that an instruction ignored the issue of mental incapacity, especially where other instructions submitted that issue.

9. WILLS—HOLOGRAPHIC WILL—THREE UNIMPEACHABLE WITNESSES. —Under Crawford & Moses' Dig., § 10494, par. 5; requiring proof of a holographic will "by the unimpeachable evidence of at least three disinterested witnesses," an instruction that such a will must be proved by at least three disinterested witnesses as to the handwriting of the body of the will and signature, and the proof of these witnesses must be sufficient to convince the jury that she actually wrote the will, independent of the evi-

dence of any witnesses that they saw her write the will, *held* erroneous as excluding corroborative evidence which might aid the jury in reaching a conclusion as to whether the witnesses were unimpeachable and whether their testimony was sufficient to establish the will.

Appeal from Garland Circuit Court; *Earl Witt,* Judge; affirmed.

*Murphy & Wood* and *James E. Hogue,* for appellant.

A date is essential to the validity of a holographic will. 111 Ark. 54; Schouler on Wills, vol. 1, § 429. *Id.* § 427, p. 501; *Id.* § 399; Alexander on Wills, vol. 1, § 40, p. 44. *Id.* § 464; 7 N. C. 134. Our statute does not require the dating of a holographic will, yet, where this is attempted and part of the date is printed and part in the handwriting of the testator, such a will should be held void. 40 Mont. 1017; 49 La. 868. Page on Wills, § 230, 27 S. E. 905. The instruction on the question of undue influence should have been given. Physical force is not necessary to establish undue influence. Gardner on Wills, p. 176, note 21; 88 N. Y. 357; 106 Ala. 314. It is anything which tends to destroy free agency and constrains the testator to do what he otherwise would not do. 361 Fed. 333; 172 Ala. 295. Instruction No. 7 to the effect that the evidence of witnesses to the handwriting, in both the body of the will and signature, should be sufficient to convince that the decedent actually wrote the will, independent of the evidence of any witnesses to the effect that they saw the decedent write the will, is the law, and should have been given. 80 Ark. 204; 130 Ark. 394; 83 Ark. 495; 45 Ark. 524; 1 Ark. 201; 20 Ark. 410. The evidence of Mrs. Cohen was incompetent. 60 Ark. 301.

*Martin, Wootton & Martin,* for appellee.

Appellant's contention that the will is void because part of the date is printed is not tenable. Our statute does not require a holographic will to be dated (C. & M. Dig. § 10, 494, par. 5.), and the cases cited by appellant from other States are decisions based on special statutes covering the subject. The date of the will is not part of the will itself. 5 Ind. 389; 79 Ky. 607; see also 125 Mich.

647.   The question of undue influence was properly withdrawn from the jury, as there was no evidence to substantiate it, as laid down in the following cases: 154 Ark. 516; 87 Ark. 148; 49 Ark. 367; 120 Ark. 407; 93 Ark. 66; 127 Ark. 68; 29 Ark. 151; 103 Ark. 236.

McCULLOCH, C. J.   This appeal involves a contest of the last will and testament of Mrs. Maeda C. Reynolds, who was a resident of the city of Hot Springs, and died on April 10, 1923.   The instrument in controversy was executed on February 24, 1923, and, being without attesting witnesses, it was offered for probate as a holographic will.   Evidence was introduced tending to show that the entire body of the will and the signature thereto were written in the proper handwriting of the testatrix, as required by statute (Crawford & Moses' Digest, § 10494, par. 5), and the verdict of the jury was in favor of upholding the will.

The instrument was written on the printed stationery of a certain hotel in Hot Springs, of which the contestee, Al A. Reynolds, was the manager, and where he and the testatrix resided at the time of the execution of the will and at the time of her death.   The instrument is in the form of a letter addressed by the testatrix to the contestee, her husband, and the printed heading on the stationery contained the name of the city, and following a blank space the figures 192.   In the space between the name of the city and the figures mentioned above there was written "Feb. 24," and the figure "3" was added in writing to the printed figures.   The whole instrument is as follows:

"Hot Springs, Ark., Feb. 24, 1923.
"Mr. Al. A. Reynolds.

"Dear Husband: I realize that my condition is serious, and I want this letter to be my last will and testament.

"I give and devise to my mother the following articles:

"My diamond and platinum bar pin.

"My diamond twin ring and one thousand dollars cash.

"To Dr. A. L. Sneed one thousand dollars in cash.

"To my aunt, Mrs. Ada K. Morrin, I give one thousand dollars in cash and mole and Kolinsky furs.

"I want you, my husband, to have everything else that I own at my death.

"I want you to be the executor of this, my will.

"Your loving wife,

"MAEDA C. REYNOLDS."

Dr. Sneed, mentioned in the will, was the stepfather of the testatrix, and Mrs. Morrin was her aunt—her mother's sister. Appellant, the mother of the testatrix, is the sole contestant.

It appears from the testimony that the contestee and the testatrix had been married about sixteen years. They had no children, and lived together in apartments at the hotel, of which the contestee was manager. Mrs. Reynolds became afflicted with cancer in the right breast, and in July, 1922, there was a serious operation performed by the removal of the right breast and adjacent glands. Physicians testified that the cancerous condition was very extensive, and that, after the operation, there was left an ulcerous wound, which continued up to the time of her death. A specialist from St. Louis examined Mrs. Reynolds at her room in Hot Springs on February 22, 1923, which was two days before the execution of the will, for the purpose of determining whether or not she could be carried to St. Louis for another operation. The physician testified that he found Mrs. Reynolds much emaciated, and unable to walk; that the abdomen was tense, the liver enlarged, and lower extremities swollen below the knees, and that she was not in any condition to be removed to St. Louis for treatment, and that he considered her mental condition at that time such that she was not capable of executing a will.

It is disclosed in the testimony that, the day before the execution of the will, a lady friend of Mrs. Reynolds stated to her that she would only live a short time, and, on the morning on which the will was executed, Mrs. Reynolds spoke of this to her husband, and expressed a

desire to make a will, and the will was then written in his presence. Appellee telephoned for another employee of the hotel, named Reynolds (not related to contestee), and he came up to the room, and the will was written in the presence of both of the men. According to the undisputed testimony, that of appellee himself and the other witness, Reynolds, the entire body of the will and signature were written by the testatrix, but she conferred with appellee during the preparation of the will, and called for suggestions from him. Both of these witnesses testified that, after witness Reynolds came into the room, Mrs. Reynolds asked contestee how to start the instrument, and he told her just to address it in the form of a letter to him and then write down the bequests she wished to make. They testified that Mrs. Reynolds stated first that she wanted her mother to have the ring and pin mentioned in the will and one thousand dollars in money, and that appellee replied "All right, just write that down." She called over the other bequests that she wanted to make in the same way and received the same reply from her husband, to write it down the way that she wanted it.

There is a conflict in the testimony as to the physical and mental condition of Mrs. Reynolds at the time of the execution of the will. Numerous witnesses, including physicians who attended Mrs. Reynolds, testified that her mental condition was good up to the time of her death. It is conceded that her physical condition was poor on account of the serious operation and the result thereof, but witnesses introduced by the contestee testified that Mrs. Reynolds was up most of the time during the day, and was able to sit at the table and write. The evidence adduced on the part of appellant tended to show that Mrs. Reynolds' physical condition was such that it was impossible for her to sit up or to do any writing at the time of the execution of the will. These conflicts in the testimony were, of course, settled by the verdict of the jury, and there are no express statutory requirements with reference to a will of this character,

except that it is essential that such an instrument shall be "established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting of each testator or testatrix."

It is first insisted that the will is not valid for the reason that it is essential to the validity of such a will that it be dated, and that the date of this instrument is not entirely in the handwriting of the testatrix, being partly printed and partly written. It is provided by statute in some of the States that a holographic will must be written, dated and signed by the testator or testatrix, and in those States the decisions are that the dating of the will is essential; but our statute contains no such requirement with respect to the dating of a will, and the prevailing rule is that, in the absence of such a statutory requirement, a will, either one that is attested or one that is holographic in form, need not be dated. This subject is fully discussed in the note to the case of *Dye* v. *Shutan.* L. R. A. 1916E, 498. The rule there stated in the note is that, "while it is the custom to date wills, in the absence of a statute it is not necessary that the will should bear a date." The question has not heretofore been presented to this court, but we are clearly of the opinion that, under our statute, the prevailing rule should be applied, and that the absence of date is immaterial, even as to a holographic will. This being true, the entire date line may be discarded so as to leave the will without a date, and that does not affect the validity of the will. An imperfect dating is no dating at all, and, as it is not an essential part of the will, it may be disregarded, and the will be upheld, if the body of the will and the signature be proved, in the manner required by statute, to be in the handwriting of the testator or testatrix. We have often held that the form of such a will is unimportant if there is compliance with the statutory requirement with regard to the body of the will and the signature being in the handwriting of the testatrix, and we have expressly held that an instrument in the form of a letter addressed to one or more beneficiaries is sufficient compliance with the

statute. *Arendt* v. *Arendt,* 80 Ark. 204; *Mason* v. *Bowen,* 122 Ark. 407; *Murphy* v. *Murphy,* 144 Ark. 429; *Borchers* v. *Borchers,* 145 Ark. 426; *Musgrove* v. *Holt,* 153 Ark. 356; *Cartwright* v. *Cartwright,* 158 Ark. 278.

It is next contended that the court erred in admitting the testimony of the contestee, Reynolds, and also that of Mrs. Morrin, another one of the beneficiaries under the will. The contention is that they are incompetent as witnesses because of their interest in the result of the controversy, and that they should be excluded under the statute which provides that, if a subscribing witness to the execution of a will wherein a beneficial devise or legacy or interest is made to the witness, and the will cannot be proved without the testimony of such witness, the devise or legacy to that witness is void, and that such person shall be a competent witness and may be compelled to testify respecting the execution of the will "in like manner as if no devise or bequest had been made to him." Crawford & Moses' Digest, § 10529. This court has decided the question contrary to the contention of appellant, and we have held that this statute only applied to beneficiaries under the will who are attesting witnesses. *Strickland* v. *Smith,* 131 Ark. 350. There was no error in permitting the witnesses to testify.

It is also contended that the court erred in permitting a witness to testify concerning the declarations of the testatrix of her knowledge as to the result under the law if she should die without a will. This declaration was to the effect that her husband would get nothing. The issue in the case was that of mental capacity or incapacity of the testatrix, and it was competent to prove her own declarations for the purpose of establishing her mental condition. *Mason* v. *Bowen, supra.*

Objection is made to the testimony of two of the witnesses, Stanley Lee and E. N. Roth, on the ground that they showed familiarity only with the signature of the testatrix and were therefore not competent to testify concerning the handwriting in the body of the will. There was no objection made to the testimony at the time it

was offered. On the contrary, appellant's counsel cross-examined the witnesses to a considerable extent for the purpose of testing the accuracy of their knowledge concerning the handwriting of the testatrix. It is too late to object here for the first time to the competency of the witnesses, and we do not understand that such is the objection made here now, but the contention is that the testimony was without probative force because of the lack of familiarity of the witnesses with the handwriting of the testatrix. The weight of the testimony was a question for the jury if the witnesses showed by their testimony sufficient familiarity with the handwriting of the testatrix to justify the court in permitting them to testify on the subject. Those witnesses testified that they had become familiar with the handwriting of Mrs. Reynolds in handling her checks on the bank. They testified that they had handled numerous checks and were particularly familiar with her signature, but their testimony was sufficient to warrant the belief that they were familiar with her handwriting other than her signature, and it was therefore proper for the court to permit them to testify and let the jury determine what weight was to be given to the testimony.

The case was submitted to the jury on the issue of mental capacity of the testatrix. Appellant alleged undue influence, but the court refused to submit that issue, on the ground that there was no evidence in the record to justify it. We think the court was correct in its conclusion, for we are unable to discover any testimony legally sufficient to justify a finding of undue influence. This court has decided that, in testing the validity of a will, the influence which the law condemns as undue "is not the legitimate influence which springs from natural affection, but the malign influence which springs from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property." *McCulloch* v. *Campbell,* 49 Ark. 367; *Miller* v. *Carr,* 94 Ark. 176; *Milton* v. *Jeffers,* 154 Ark. 516. All that is shown in the effort to establish undue influence is the

relationship between the contestee and the testatrix as
husband and wife, and the fact that he was present at the
time of the execution of the will, and, at her request,
made suggestions concerning the form of the instrument.
Nothing more was proved than that, and the same wit-
nesses who testified to those facts testified that the testa-
trix acted freely, of her own accord, in framing the
testament, and that she was of sound mind at the time.
To permit the jury, under the facts established in the
present case, to find that there was undue influence, would
be to uphold a verdict upon a mere conjecture. or a
bare inference of undue influence, from the fact alone
that the chief beneficiary of the will was the husband of
the testatrix and that he was present in conference with
the testatrix at the time of the execution of the will.
If that be sufficient, it would be next to impossible for one
of the spouses to make bequests to the other without lay-
ing the transaction open to more than a mere suspicion of
undue influence, and to permit a trial jury to infer from
the relationship alone that there might have been undue
influence. In order to submit that, as well as any other
issue to the jury, there must be substantial evidence which
would warrant the jury in drawing a reasonable infer-
ence that the will was executed under that "malign
influence which springs from fear, coercion, or any other
cause which deprives the testator of his free agency in
the disposition of his property."

There are numerous other assignments of error with
respect to the instructions given and refused.

The first instruction given by the court at the instance
of the contestee is as follows:

"1. This is an action by Al A. Reynolds and others
to establish a certain paper writing, introduced and read
in evidence, as the last will and testament of Meada C.
Reynolds, deceased. If you believe from a fair prepon-
derance of the evidence that the entire body of the will,
together with the signature of Meada C. Reynolds, was
written by her in her own proper handwriting, and that
this fact has been proven to your satisfaction by the

unimpeachable evidence of at least three disinterested witnesses, then it would be your duty to find in favor of the will.''

It is contended that this instruction was erroneous in ignoring the issue of mental incapacity. There was no specific objection made to the instruction, and we are of the opinion that a general objection was insufficient to raise the question that it ignored the issue of mental incapacity, which was fully submitted in other instructions. This instruction manifestly was intended to relate only to the issue in the case as to the execution of the instrument, and, if it was thought that it excluded the other issue in the case, attention should have been called to the omission by a specific objection.

Instruction No. 7, which was requested by appellant and refused by the court, reads as follows:

''The court instructs the jury that, before the instrument offered as the will of Meada C. Reynolds can be established, it must be proved by at least three disinterested witnesses that both the entire body of the will and the signature thereto is in the handwriting of Meada C. Reynolds, and the proof of these three witnesses as to the handwriting of both the body of the will and the signature must be sufficient to convince you that she actually wrote the will, independent of the evidence of any witnesses to the effect that they saw her write the will.''

This instruction was erroneous in telling the jury that, as a matter of law, the testimony of three disinterested witnesses as to the handwriting of the testatrix must be sufficient, independent of any other evidence, as to the handwriting of the will. The statute, as we have already seen, requires that a holographic will ''may be established by the unimpeachable evidence of at leas' three disinterested witnesses to the handwriting of each testator or testatrix,'' but this statutory provision does not exclude other testimony in corroboration. Before such a will can be sustained it must be proved by the ''unimpeachable evidence of at least three disinterested witnesses to the handwriting,'' and the testimony,

together with all other testimony in the case, must be sufficient to satisfy the jury, but the court had no right to exclude other testimony which might aid the jury in reaching a conclusion as to whether or not the witnesses were unimpeachable and whether or not their testimony was sufficient to establish the will. This particular question has not heretofore been presented, but our decision in the case of *Murphy* v. *Murphy, supra,* sufficiently indicates what the law is on this subject, likewise the opinion of the court in *Arendt* v. *Arendt, supra.* In both of those cases we held that the language of the statute meant an unimpeachable witness to be one whom the jury found to have spoken truthfully and whose conclusion they found to be correct, though there was other evidence tending to contradict him. We see nothing in the statute which forbids the corroboration of witnesses to the handwriting in order to support their testimony to the effect that the handwriting is that of the testator or testatrix.

After considering all the assignments of error in the record, we are of the opinion that none of them are well founded, and that the case was properly sent to the jury upon correct instructions and upon legally sufficient evidence. The judgment is therefore affirmed.