

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-368

|  |  |
|---|---|
| GARY ZULPO and RICHARD ZULPO<br>APPELLANTS | **Opinion Delivered** December 18, 2013 |
| V. | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT<br>[NO. 23CV-2011-1029] |
| JAMES BLANN, BECKY BLANN MORRISS, PATTY BLANN WISINGER, and DANA BLANN MCKAY<br>APPELLEES | HONORABLE CHARLES E. CLAWSON, JR., JUDGE<br>AFFIRMED |

## ROBIN F. WYNNE, Judge

Gary Zulpo and Richard Zulpo appeal from a judgment of the Faulkner County Circuit Court in which the court found that they were not entitled to a share of the proceeds from a wrongful-death action because they did not qualify as beneficiaries under the applicable statute. They argue in their brief that the decedent stood in loco parentis to them and, as a result, the trial court's decision is in error. We affirm.

Appellants are the stepchildren of Freddy Blann. Appellees are the biological children of Mr. Blann. Mr. Blann married Maxie Kagenbein, appellants' mother, in 1974 when both appellants were teenagers. When appellants' parents divorced, their biological father, Franklin Zulpo, was given custody of them and their mother was awarded visitation. Mr. Blann died in 2004 as a result of taking medication that was later the subject of a federal lawsuit brought by Ms. Kagenbein, as Mr. Blann's surviving spouse. She died before that litigation was

resolved. After her death, a settlement of the litigation was proposed. James Blann filed a complaint in Faulkner County Circuit Court asking the court to determine the heirs of Freddy Blann. On May 4, 2011, the circuit court entered an order finding that appellees were the heirs of Mr. Blann. An attorney representing appellants contacted Carey & Danis, LLC, the law firm that represented Ms. Kagenbein in the wrongful–death litigation, and informed the firm of appellants' relationship with Mr. Blann. On October 21, 2011, Carey & Danis filed a complaint for interpleader in which it sought to deposit the net proceeds of the settlement into the registry of the court and be discharged from liability. The firm also prayed for a declaratory judgment distributing the settlement proceeds pursuant to Arkansas law. Appellees answered the complaint and prayed that they be awarded the entire settlement amount. Appellants also answered the complaint and prayed that they be awarded a share of the proceeds based on their contention that Mr. Blann stood in loco parentis to them. On March 20, 2012, the trial court ordered that the settlement proceeds of $151,563.60 be paid into the registry of the court and discharged Carey & Danis from liability.

The trial court held a hearing on the issue of whether Mr. Blann stood in loco parentis to appellants. Emma Ellis, Mr. Blann's sister, testified that her brother treated appellants as if they were his own children. Peggy Cook Vernon, a former neighbor of Mr. Blann and appellants' mother, testified that appellants were frequently at Mr. Blann's home. Ms. Vernon had heard Mr. Blann refer to appellants as "son." She saw Mr. Blann's son at the home one time and never saw any of his daughters there.

Richard Zulpo testified that Mr. Blann was like a father to him and treated him like

2

a son. Mr. Blann gave him money, and they did activities together as a family. Richard testified that Mr. Blann also gave him a watch and told him to "pass it down the line." Richard was fifteen years old when his mother married Mr. Blann. He lived with his father and did not see his mother or Mr. Blann for two years until he received his driver's license. Gary Zulpo, Richard's younger brother, likewise testified that Mr. Blann was like a father to him. He testified that he and his wife went to see Mr. Blann every day while he was in the hospital prior to his death. Gary stated that, after his parents divorced, Franklin Zulpo supported him. Both appellants lived in their father's home until after they turned eighteen.

On October 26, 2012, the trial court filed a letter opinion in which it found that Mr. Blann did not stand in loco parentis to appellants. The letter order was incorporated by reference into a judgment filed on November 7, 2012, in which the trial court ordered that the settlement proceeds be distributed to Mr. Blann's heirs as determined in the May 4, 2011 order. This appeal followed.

Prior to 2001, Arkansas Code Annotated section 16-62-102(d)(3) stated that the beneficiaries of a wrongful-death action included "persons to whom the deceased stood in loco parentis." In 2000, the Arkansas Supreme Court issued a decision in *Babb v. Matlock*, 340 Ark. 263, 9 S.W.3d 508 (2000). In that case, grandchildren of the deceased in a wrongful-death action who had been raised by the deceased filed a motion to intervene in the wrongful-death action, arguing that they were heirs at law and beneficiaries of the settlement of the action. The supreme court, based on a strict interpretation of the existing statutory language, affirmed the trial court's denial of intervention, holding that the relationship of in

SLIP OPINION

loco parentis did not extend past the age of majority. In response, the legislature amended section 16-62-102(d)(3) to state that beneficiaries included "persons, *regardless of age*, to whom the deceased stood in loco parentis *at any time during the life of the deceased*." (emphasis added).

Appellants argue on appeal that they proved that they enjoyed an in loco parentis relationship with Mr. Blann. They also argue that the 2001 amendment allows one adult to stand in loco parentis to another adult. Because appellants failed to prove that Mr. Blann stood in loco parentis to them at any point during his life, the trial court did not err in holding that they are not beneficiaries under section 16-62-102. As the decision of the trial court is affirmed on that basis, it is unnecessary for us to consider appellants' argument that the 2001 amendment allows a person to act in loco parentis to another person who is an adult.

Both appellants testified that, after their parents divorced, they lived with their father, Franklin Zulpo. Franklin Zulpo provided their support until after they each turned eighteen. There was testimony that after appellants became adults, Mr. Blann loaned them money and gave one of them a watch. Mr. Blann helped them out from time to time and engaged in activities with both appellants, and they testified that they visited him frequently until his death. The evidence is clear that there was a warm relationship between appellants and Mr. Blann and that Mr. Blann was a caring stepparent. However, at no time did Mr. Blann assume the role or responsibilities of a parent with regard to either appellant and, as such, the relationship between appellants and Mr. Blann never rose to the level of in loco parentis. The trial court correctly determined that appellants are not beneficiaries of the wrongful-death settlement as that term is defined in section 16-62-102.


Affirmed.

Hixson and Brown, JJ., agree.

*Ralph M. Cloar*; and
*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Frances Morris Finley*, for appellees.