--------
Opinion Delivered: April 24, 2019 Rehearing Denied May 15, 2019
MIKE MURPHY, Judge *40 This appeal comes from a decision of the probate division of the Drew County Circuit Court admitting a holographic will of Judge Elza Clifton Bond, Jr., to probate. The appellants are Judge Bond's maternal first cousins, and the appellee, Barbara Gibson, was nominated as personal representative of Judge Bond's estate in the holographic will.
On appeal, the appellants argue that it was erroneous for the circuit court to admit the will to probate. They further argue that it was erroneous for the court to place the burden of proving any incapacity on them. For the reasons discussed below, we affirm.
Judge Bond died on February 17, 2014. While cleaning out Judge Bond's house, Frank Gibson, one of Judge Bond's paternal cousins, found in a satchel a handwritten document that appeared to be a will. He testified that there were other items in the satchel, the rest of which related to the death and funeral of Judge Bond's wife. At the trial, several witnesses were asked about the handwriting on the document. Everyone who was asked testified that it was written entirely in Judge Bond's handwriting. Judge Bond's signature appears at the end, but it is not dated. At the end of the document, there is a handwritten attestation clause with blanks in it. Those blanks were never filled in.
At trial, both parties presented several witnesses, including experts, to testify regarding the competency of Judge Bond. The lay witnesses primarily testified concerning their personal experience with Judge Bond over many years and, in particular, their time with him following the death of his wife, Marjorie Mae, on April 9, 2011. The testimony offered by both parties indicated that Judge Bond was mentally competent and in fairly good health through most of 2013. Johnathan Davis, a local forester, managed a timber cutting and sale for Judge Bond during the first half of 2013 and indicated that Judge Bond was able to understand and handle the business transaction capably. There was some testimony offered that toward the end of 2013, Judge Bond occasionally exhibited odd behavior and hallucinations. On December 18, 2013, Judge Bond was admitted to a hospital for an infection. From there he was transferred to three other facilities, and he passed away at the third facility. He did not return home after December 18.
The circuit court admitted the will to probate. It found that three credible, disinterested witnesses established that the handwriting and signature belonged to Judge Bond and was signed in conformity with Arkansas Code Annotated section 28-25-104 (Repl. 2012), our holographic-will statute. The circuit court further found that once admitted, it was the appellants' burden, as the ones contesting the will, to establish that the will was executed without testamentary capacity. The appellants now timely appeal.
Probate cases are reviewed de novo; however, we will not reverse the circuit court's findings of fact unless they are clearly erroneous. Minton v. Minton , 2010 Ark. App. 310, at 4, 374 S.W.3d 818, 820. A finding is clearly erroneous when, *41 although there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake has been committed. Id. In our review, we defer to the circuit court's evaluation of the credibility of the witnesses. Id.
Arkansas Code Annotated section 28-25-104 provides that
[w]hen the entire body of the will and the signature shall be written in the proper handwriting of the testator, the will may be established by the evidence of at least three (3) credible disinterested witnesses to the handwriting and signature of the testator, notwithstanding there may be no attesting witnesses to the will.
The appellants do not contend that the document admitted to probate does not meet those requirements. Instead, they first argue that Judge Bond lacked testamentary intent when creating it because it was undated and contained blanks in the attestation clause. They cite Peevy v. Ritcheson , 261 Ark. 841, 552 S.W.2d 218 (1977), for the proposition that a missing date demonstrates missing testamentary intent,[1] and they argue that several other states that have addressed the issue of blanks in attestation clauses equally demonstrates missing testamentary intent. See, e.g. , Barnes v. Syester , 14 Md. 507 (1859) ; Mealing v. Pace , 14 Ga. 596 (1854) ; In re Blocks' Estate , 143 Fla. 163, 196 So. 410 (1940).
We are not so persuaded, however, because dates and attestation clauses are not critical to the validity of a holographic will in Arkansas. In fact, in Sneed v. Reynolds , 166 Ark. 581, 586, 266 S.W. 686, 687 (1924), our supreme court explicitly stated that a holographic will does not need to be dated to be valid because the statute does not require it to be. Likewise, our statute contemplates the admission of wills without attestation. Ark. Code Ann. § 28-25-104.
To be fair, the appellants did acknowledge the precedent of Sneed in their brief, but they do so to explain that while the will might be statutorily sufficient, the lack of a date indicates a lack of testamentary intent. Nevertheless, the law surrounding testamentary intent is well settled. A will is a disposition of property to take effect upon the death of the maker of the instrument. Edmundson v. Estate of Fountain , 358 Ark. 302, 307, 189 S.W.3d 427, 430 (2004). To be a valid will, an instrument must be executed with testamentary intent, which is the intention to dispose of one's property upon one's death. Id. This court determines that intent by looking to the four corners of the instrument. Id. It is a question of law for the court to determine from the face of the instrument whether the writer intended to make a testamentary disposition. Id.
The document in question is titled "Last Will and Testament of Elza Clifton Bond, Jr." It disposes of Judge Bond's property; leaves instructions for his burial and how he would like his tombstone; and devises his property to his paternal cousins, who are correctly identified by name, as tenants in common. It is written entirely in Judge Bond's handwriting and signed at the bottom. As previously mentioned, it meets the requirements of Arkansas Code Annotated section 28-25-104, which requires only that the entire body of the will be written in the testator's handwriting and signed. The statute does not require a date or witnesses to attest execution. The four corners of this document demonstrate *42 that the writer intended to make a testamentary disposition.
The appellants spend some time discussing how extrinsic evidence establishes that Judge Bond did not have testamentary intent at the time of the document's execution. They cite evidence that Judge Bond had told some people that he did not have a will and that when discussing his estate, he had said that his intent was for the cousins to "fight it out." However, because the testamentary intent is established within the four corners of the document, the consideration of extrinsic evidence is unnecessary here. Chambers v. Younes , 240 Ark. 428, 430, 399 S.W.2d 655, 657 (1966) ("Inquiry may be made into all relevant circumstances where the existence of testamentary intent is in doubt. ") (emphasis added).
Next, the appellants argue that the circuit court erred in placing the burden of proof of testamentary capacity on them and not on the petitioners. The burden of proving mental incompetency, which will defeat a will, is upon the party contesting it. Greenwood v. Wilson , 267 Ark. 68, 71, 588 S.W.2d 701, 703 (1979). Here, the circuit court stated in its order that "[t]he holographic will was not dated and because of that fact, the Court, correctly or incorrectly, shifted the burden of going forth with the evidence of incapacity to the petitioners. However, the ultimate burden of proving mental incompetency never shifted from the contestant of the will." The court then went on to summarize the testimony regarding Judge Bond's mental capacity in the later stage of his life. It found that Judge Bond was competent until "toward the end of 2013." It further found that the document was executed with the statutory formalities and made with a clear intent to dispose of property after the testator's demise. It found that the appellants did not meet the ultimate burden of proving incompetency at the time the will was executed. These findings are not clearly erroneous.
Finally, the appellants discuss how untenable it is to ask those contesting wills to prove incompetency at the time a will was executed in situations in which a will is undated. We acknowledge this is no easy task, especially when there is some evidence that a decedent may have suffered from episodes of incompetency during the time a will might have been created. For situations like this, the appellants ask us to consider adopting a burden-shifting framework similar to one in California's holographic-wills statute. That statute provides that "[i]f it is established that the testator lacked testamentary capacity at any time during which the will might have been executed, the will is invalid unless it is established that it was executed at a time when the testator had testamentary capacity." Cal. Prob. Code § 6111(b)(2) (Westlaw current through 2019 Legis. Sess.). However, we decline to entertain this argument because adopting a new framework is not this court's place. Matters of public policy are more appropriately within the purview of the legislature. Cato v. Craighead Cty. Cir. Ct. , 2009 Ark. 334, at 10, 322 S.W.3d 484, 490.
Affirmed.
In Peevy , a circuit court refused to probate a handwritten instrument that disposed of the decedent's property. That document was not signed; thus, it did not meet the requirements of Arkansas Code Annotated section 28-25-104.