Cite as 2021 Ark. App. 199

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-20-329

| | |
|---|---|
| AL M. WILLIAMS<br><div align="right">APPELLANT</div><br><br>V.<br><br><br>ERMA JEAN DAVIS; THE ESTATE OF EARLEE WALKER; AND RICCO WALKER, ADMINISTRATOR OF THE ESTATE OF EARLEE WALKER<br><div align="right">APPELLEES</div> | **Opinion Delivered:** April 28, 2021<br><br>APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT<br>[NO. 54PR-19-11]<br><br>HONORABLE RICHARD L. PROCTOR, JUDGE<br><br><br>AFFIRMED |

**KENNETH S. HIXSON, Judge**

James L. Bailey was killed in a motor-vehicle accident. Bailey's estate filed a wrongful-death action against the tortfeasor that caused the fatal accident. The estate settled the claim and petitioned the probate division of the Phillips County Circuit Court to apportion the settlement proceeds. Appellant Al M. Williams alleged that he was a beneficiary under the wrongful-death statute in that Bailey was his stepfather or that Bailey stood in loco parentis to Williams. The circuit court rejected Williams's claim and therefore found that Williams was not entitled to any portion of the proceeds. Williams now appeals, arguing that the circuit court erred in finding that he failed to prove that Bailey had stood in loco parentis to him. We affirm.

Probate cases are reviewed de novo; however, we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *In re Estate of Bond*, 2019 Ark. App. 241,

576 S.W.3d 38. A finding is clearly erroneous when, although there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake has been made. *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007). We also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *Id.*

Bailey, a longtime resident of Phillips County, was killed in an automobile accident involving a tractor-trailer on January 15, 2019. At the time of his death, Bailey had no biological children or other immediate family members, except for two sisters, appellee Erma Jean Davis (Erma) and Earlee Walker.[1]

On January 17, 2019, Erma was appointed as the administratrix of Bailey's estate. Thereafter, Erma, as the personal representative of Bailey's estate, filed a wrongful-death action against the owner of the tractor-trailer pursuant to Ark. Code Ann. § 16-62-102(b) (Supp. 2019), and reached a proposed settlement agreement. On April 23, 2019, Erma, as administratrix, filed a petition in the probate division of circuit court to compromise the wrongful-death claim and to set the matter for a hearing to determine the final distributions of the proceeds to Bailey's beneficiaries.

Meanwhile, Williams had filed a claim against Bailey's estate. Williams asserted that he was Bailey's stepson and that Bailey had stood in loco parentis to Williams throughout Williams's minority and majority and at the time of Bailey's death. Williams claimed

---

[1]Earlee died not long after Bailey's death, and Earlee's estate became a party to these probate proceedings.

entitlement to wrongful-death distributions pursuant to Ark. Code Ann. § 16-62-102(d), which provides that the beneficiaries in a wrongful-death action under this section are:

(1) The surviving spouse, children, father, mother, brothers, and sisters of the deceased person;

(2) Persons, regardless of age, standing in loco parentis to the deceased; and

(3) *Persons, regardless of age, to whom the deceased stood in loco parentis at any time during the life of the deceased.*

Ark. Code Ann. § 16-62-102(d) (Supp. 2019) (emphasis added).

On April 23, 2019, the circuit court entered an order authorizing compromise of the wrongful-death claim. The circuit court approved the wrongful-death settlement but reserved ruling on final distributions to the beneficiaries pending a hearing.[2] The hearing was held on September 17, 2019.

Appellee Erma Jean Davis testified at the hearing. Erma stated that she is Bailey's older sister but was more like a mother to him when they were younger. She stated that as they grew older, they maintained a close relationship. Erma stated that she referred to Bailey as "Sonny."

Erma testified that, many years ago, Bailey was married to Dorothy Williams for a period of about ten years. Dorothy had two children from a previous relationship—Denetra Williams and appellant Al Williams—who were then minors and had lived with Bailey and Dorothy in Phillips County during the marriage. Erma stated that there were separations during the marriage of Bailey and Dorothy, and she described their relationship as "hot and

---

[2]The circuit court's order approved a partial distribution to Bailey's estate's retained counsel who had negotiated the settlement.

3

cold." Erma stated that when they would separate, Bailey would reside with one of his sisters. Erma testified that she never heard Bailey refer to Williams as his son. Erma stated that when Williams was in high school she took him fishing "every once in a while" and that during that time she treated Williams as a nephew "but not a close nephew."

Denetra Williams, Al Williams's sister, testified next. Denetra stated that their biological father is Herschel Chestnut. Denetra stated that their mother received child-support payments from Herschel while they were growing up and that their father would also sometimes visit them. Denetra stated that her mother was married to Bailey during part of the time she and Williams were growing up but that it was an on-again, off-again relationship. Denetra stated that Bailey would provide for the family when he was working. Denetra stated that her mother and Bailey were separated when she graduated from high school and that they separated for the last time in the early 1990s. Denetra did not refer to Bailey as her father but instead called him "Sonny."

Denetra recalled that Bailey sometimes disciplined the children; however, she could not recall Bailey ever spanking Williams. She stated that "sometimes [Williams] would do stuff" but that "[Bailey] just kind of stayed away from [Williams]." Denetra explained that if Bailey tried to discipline Williams, Williams "had a tendency to tell momma and then it would be a problem between [Bailey] and momma . . . [t]hey would end up getting into it."

Denetra testified that during his adult life, Williams had lived in Texas, Memphis, and Little Rock, and that he had also been in prison for several years. Denetra stated that Williams was in his early twenties when he was released from prison, and at that time, he

was released to live with their mother in Phillips County. Denetra stated that, during that time, Bailey owned a lawnmower shop, and that Bailey loaned Williams some tools so he could earn some money. Denetra testified that "[Bailey] was nice like that and would let anybody borrow anything he had." Denetra stated that Williams had not lived in Phillips County for many years, and she was unaware of any continuing relationship between Williams and Bailey.

Al Williams testified on his own behalf. Williams stated that he is forty-nine years old and that "James Bailey was my daddy." He clarified that "he was my step-daddy but he was the only man that ever slept in a bed with my mom that I know about." Williams stated that he met Bailey when he was around seven years old when Bailey and his mother had started dating. Williams acknowledged that after his mother married Bailey, they intermittently separated throughout the marriage. He stated that he was about twenty years old the last time they separated.

Williams testified that, when he was growing up, Bailey was more like a dad to him than his biological father. Williams stated that Bailey taught him to play chess and how to shoot a gun. Williams recalled one occasion when he shot his friend's dog with a BB gun and Bailey spanked him. Williams testified that this was the only spanking he ever got.

Williams stated that he got into trouble with the law after college and that when he got out of prison, Bailey gave him a job at his lawnmower shop. Williams claimed that Bailey taught him how to work on mowers and that he worked intermittently for Bailey for three years.

5

Williams testified that he did not work for Bailey after that, and that their relationship resumed around 2008. Williams stated that he was living in Little Rock at that time and that he would meet Bailey at the VA hospital and help him fill out forms for veterans benefits. Williams stated that from 2008 forward, he depended on Bailey for advice and counsel. Williams stated that he presently lives in Texas, where he has lived for the past six years. Williams stated, "I miss [Bailey] like everybody else does."

On October 24, 2019, the circuit court entered an order distributing the wrongful-death settlement proceeds received by Bailey's estate. In that order, the circuit court divided the proceeds equally between Erma Jean Davis and Earlee Walker.[3] The circuit court found that because Williams failed to prove that Bailey had ever stood in loco parentis to him, Williams would take no portion of the proceeds. The circuit court made these findings in its order:

> Al Williams is . . . not entitled to any part of the settlement proceeds recovered for the wrongful death of James L. Bailey. While Mr. Williams has argued that James L. Bailey stood in loco parentis to Al Williams, no evidence was presented to support such a relationship. Specifically, Mr. Williams only presented evidence of his relationship with Mr. Bailey as a stepparent during Mr. Bailey and Mr. Williams' mother's on-again and off-again relationship. Mr. Williams' natural father provided financial support for Mr. Williams and no adoption proceedings nor guardianship ever took place granting Mr. Bailey any parental rights. Mr. Bailey did not assume the duties of fatherhood. Mr. Williams bases his claim to a distribution from the wrongful death settlement proceeds on his status as a former step-child of Mr. Bailey. Simply being a former step-child does not establish an in loco parentis relationship. Moreover, the Court, after observing Mr. Williams' testimony and behavior at the hearing, finds it very difficult to give him credibility. . . .
>
> Mr. Williams did not live with Mr. Bailey during the long periods of separation and divorce. . . . As Mr. Williams grew older, his behavior resulted in a prison term and there was no testimony of any visits by Mr. Bailey. The fact that Mr. Williams

---

[3]Actually, the estate of Earlee Walker. See footnote 1.

6

learned about repairing lawnmowers and worked briefly in Mr. Bailey's shop does not meet the burden of proof to establish the relationship claimed. There was no intent proven that Mr. Bailey ever assumed the duties of fatherhood. It appears to the court that the claim of Mr. Williams is based, not on how he grieved, but on his prospect of sudden gain. . . . The Court, under no circumstances, can come to a conclusion that Mr. Williams is entitled to any part of the award.[4]

In this appeal, Al Williams argues that the circuit court erred in not finding an in loco parentis relationship between James Bailey and himself. Williams asserts that he lived with Bailey as his stepfather during the formative years of his life. Williams states that although he has a biological father, he had never lived with him. Williams asserts that when he and Bailey lived together as a family, Bailey took him hunting and fishing and taught him to play chess. Bailey also provided some support for the family. Finally, Williams states that after he was released from prison, he worked for Bailey in his lawnmower shop. From this evidence, Williams argues that he established an in loco parentis relationship and that he should have been allowed to share in the wrongful-death settlement proceeds received by Bailey's estate.

Our supreme court has explained the doctrine of in loco parentis as follows:

> The Latin phrase, "in loco parentis," literally translated, means "in the place of a parent." *Simms v. United States*, 867 A.2d 200 (D.C. 2005). This court has defined in loco parentis as "in place of a parent; instead of a parent, charged factitiously with a parent's rights, duties, and responsibilities." *Standridge v. Standridge*, 304 Ark. 364, 372, 803 S.W.2d 496, 500 (1991). A person who stands in loco parentis to a child puts himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to a legal adoption. *Babb v. Matlock*, 340 Ark. 263, 9 S.W.3d 508 (2000). This relationship involves more than a duty to aid and assist, and more than a feeling of kindness, affection, or generosity. *Simms*, *supra*.

---

[4]Some of these findings by the circuit court were made in its letter opinion, which was incorporated into the court's order of distribution.

One's mere status as a stepparent does not support a finding of in loco parentis. *Stair v. Phillips*, 315 Ark. 429, 867 S.W.2d 453 (1993). "Something more must be shown to qualify as standing in loco parentis." *Id*. at 435, 867 S.W.2d at 456. In loco parentis refers to a person who has fully put himself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship and who actually discharges those obligations. *Rutkowski v. Wasko*, 286 A.D. 327, 143 N.Y.S.2d 1 (N.Y. App. Div. 1955). A stepparent who furnishes necessities for a minor child of his or her spouse and who exercises some control over the child does not, by those acts alone, establish a parental relationship. *Id*. In making a determination as to whether a nonparent stands in loco parentis, courts consider the totality of the circumstances and do not lightly infer the intent of the person seeking to be considered as standing in loco parentis. *Smith v. Smith*, 922 So.2d 94 (Ala. 2005). While the length of time a person spends with a child is not determinative, it is a significant factor in considering whether that person intended to assume parental obligations or has performed parental duties. *Id*.

*Daniel v. Spivey*, 2012 Ark. 39, at 6–7, 386 S.W.3d 424, 438.

Applying the above considerations to the testimony and leaving credibility determinations to the circuit court, we hold that the circuit court did not clearly err in finding that the relationship between Bailey and Williams never rose to the level of in loco parentis. As found by the circuit court, the mere fact that Williams was Bailey's former stepchild does not establish an in loco parentis relationship. Although Bailey was married to Williams's mother during part of Williams's youth, this was an on-again, off-again marriage marked by multiple separations. During this time period, Williams and his sister were receiving child support from their biological father. And there was testimony that Bailey "stayed away from" Williams and refrained from disciplinary action against him for fear of causing friction between Bailey and Williams's mother. There was also a lack of

evidence that, after Bailey and Williams's mother separated for the final time, there was any sort of sustained relationship between Williams and Bailey.[5]

In loco parentis refers to a person who has fully put himself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship and who actually discharges those obligations. *Daniel*, *supra*. In determining whether a nonparent stands in loco parentis, courts consider the totality of the circumstances and do not lightly infer the intent of the person sought to be standing in loco parentis. *See id*. On the totality of the circumstances, there was no clear error in the circuit court's finding that Bailey had never assumed the obligations of a parent to Williams and that there never was an in loco parentis relationship. Therefore, the circuit court correctly determined that Williams was not a beneficiary of the wrongful-death settlement and was thus not entitled to any portion thereof.

Finally, we observe that, for the first time in his reply brief, Williams argues that the circuit court erred in denying his motion for continuance. An argument made for the first time in a reply brief comes too late and will not be considered by this court. *Sanders v. Passmore*, 2016 Ark. App. 370, 499 S.W.3d 237. Therefore, we do not consider this argument.

---

[5]Because Al Williams failed to prove that James Bailey had assumed the role or responsibilities of a parent at any time during Williams's life, it is unnecessary for us to consider, for purposes of the wrongful-death-beneficiary statute, whether an adult may stand in loco parentis to another adult. *See Zulpo v. Blann*, 2013 Ark. App. 750.

Affirmed.

GLADWIN and BARRETT, JJ., agree.

*Walters, Gaston, Allison & Parker*, by: *Troy Gaston*, for appellant.

*Ark Ag Law, PLLC*, by: *J. Grant Ballard*, for appellees.